In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-2458

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

LARRY E. HODGE,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Indiana, Evansville Division.
No. 3:11-cr-00007-RLY-WGH — **Richard L. Young**, *Chief Judge.*

ARGUED MAY 21, 2013 — DECIDED SEPTEMBER 6, 2013

Before RIPPLE, WILLIAMS, and TINDER, *Circuit Judges.*

TINDER, *Circuit Judge.* Larry Hodge pleaded guilty and was
sentenced to 1380 months' imprisonment for multiple child
pornography offenses. During his sentencing hearing, he
offered testimony in mitigation from psychiatrist Dr. Louis
Cady. The district court discussed some of Cady's findings in
explaining the sentence imposed, but neglected to mention
other findings, most notably Dr. Cady's contentions that

Hodge's history of sexual and psychological abuse as a child contributed to his decision to commit his offenses and that Hodge was unlikely to reoffend. Hodge claims that the district court's alleged failures to address adequately these arguments constitute procedural error. We disagree.

**I.**

In November 2010, police in Evansville, Indiana, received a tip that Hodge had sent text messages containing sexually explicit images of Hodge and a child. Under police questioning, Hodge identified himself in the images and admitted to engaging in sexual acts with the child. During a search of Hodge's home, police seized a computer and data storage equipment that contained several disturbing images, including depictions of the child performing oral sex on Hodge, sexually explicit poses and acts involving the child and Hodge's wife, and sadistic abuse of the child involving ropes and a dog collar. Hodge later admitted that the child in these images was his niece, who was nine-years-old at the time of most of the abuse.

In March 2011, Hodge was indicted on seven counts of production of sexually explicit material involving a minor in violation of 18 U.S.C. § 2251(a) and (e), two counts of conspiracy to produce sexually explicit material involving a minor in violation of 18 U.S.C. § 2251(a), and two counts of distribution of sexually explicit material involving a minor in violation of 18 U.S.C. § 2252(a)(1). Hodge's wife and another person who received some of these images from Hodge were also indicted on several charges. Hodge initially pleaded not guilty to these charges, but then changed his plea to guilty in December 2011.

The presentencing report correctly stated that the entire range for Hodge's advisory Guidelines sentence was 3720 months, i.e., 310 years. (His Guidelines total Offense Level was 49, for which the Sentencing Table recommends life imprisonment. However, the maximum period of incarceration allowed by any of the statutes under which he was convicted is 30 years. Therefore, his Guideline range, or in this case a point, is determined by calculating the maximum allowable sentence on each count if imposed consecutively. *See* U.S.S.G. § 5G1.1(a).) Prior to sentencing, Hodge submitted to three psychiatric evaluations performed by Dr. Cady. Hodge also filed a sentencing memorandum, in which he argued for a downward departure from the advisory Guidelines based on his acceptance of responsibility, community service, past history as a victim of childhood sexual abuse, and contention that he was not likely to reoffend following completion of sex offender counseling and treatment. The government also filed a sentencing memorandum, in which it argued that Hodge's sentences for each count should run consecutively, based on the seriousness of his offenses, the harm to the victim, and the need to avoid sentencing disparities between similar offenders.

The district court held a sentencing hearing in May 2012. Dr. Cady testified at this hearing, where he described Hodge's mental health issues that, according to Dr. Cady, culminated in Hodge committing these offenses. Dr. Cady testified that Hodge was the victim of sexual abuse as a child. According to Dr. Cady, the trauma that Hodge suffered from this experience, coupled with his early exposure to pornography and extensive physical and emotional abuse, caused Hodge to become prematurely sexualized. Hodge's early sexualization

led to impaired brain function and other serious problems as an adult. Dr. Cady stated that Hodge's childhood trauma and consequent mental and physical health issues as an adult helped form the basis of an addiction to pornography, obsessive personality disorder, and other psycho-biological disorders. These problems, in turn, contributed to his committing the instant offenses.

In making this diagnosis, Dr. Cady relied in part on Hodge's statement to him that Hodge had not engaged in oral sex with the victim. In fact, Dr. Cady did not view the photographs that were the subject of the prosecution. Instead, he relied on Hodge's explanation to him of how the molestations occurred and how the photographs were produced. During the government's cross-examination of him, Dr. Cady stated that, were he to learn that Hodge had not been truthful on this point, "if it was a calculated, deliberate attempt to mislead me, I would be concerned about it," but that it would not necessarily affect Dr. Cady's assessment of Hodge. After reviewing photographic evidence, the district court concluded that Hodge had in fact engaged in oral sex with the victim. Dr. Cady also testified that part of the reason he felt Hodge to be capable of rehabilitation is that his conversations with Hodge led him to believe that various degrading depictions of the child victim had been merely posed with the consent of the child, and were not coerced events. Dr. Cady stated that if he were to learn that force was used, he would be more concerned about Hodge's prospects for rehabilitation. The government later introduced some of Hodge's photographs for the judge's viewing which showed the child victim's face being shoved into the buttocks of an adult.

Dr. Cady concluded that Hodge was unlikely to reoffend. Dr. Cady based this conclusion in part on Hodge's acceptance of responsibility for his offenses, his separation from pornographic material while in detention, and the prospect that Hodge could participate in a sex offender treatment group in prison. Although Dr. Cady found that Hodge meets many, if not all, of the criteria for pedophilic disorder, Dr. Cady expressly stated that he did not diagnose Hodge with that disorder.

In addition to Dr. Cady, Hodge called three family members as witnesses. These family members testified that Hodge had positive relationships with them and was a hard worker. The government called an Evansville police detective in aggravation. This detective laid the foundation for admitting copies of all of the images into evidence, including the ones mentioned above. Following the testimony of these witnesses, Hodge argued for a sentence of 180 months (fifteen years). The government argued for a 1380-month (115-year) sentence.

After correctly calculating the advisory Guidelines range, the district court discussed the considerations that it weighed in determining Hodge's sentence, paying particular attention to the factors that 18 U.S.C. §3553(a) directs courts to consider. The district court began its discussion of the §3553(a) factors with the nature and circumstances of Hodge's offenses. The court emphasized the disturbing nature of the images, Hodge's betrayal of his niece's trust, the likelihood that the victim would "always … have [the offenses] in the back of her mind," and the permanence of images posted online, making them a continuing source of harm to the victim.

The court then turned to discussing Hodge's history and characteristics. In mitigation, the court noted that Hodge had no prior criminal history, that he cooperated fully with the investigation, and that he accepted responsibility for his crimes. The court also discussed Dr. Cady's report during the history-and-characteristics portion of the sentencing hearing. The court cited Dr. Cady's report in stating that Hodge "has reported abuse as a young child" and "addiction to pornography." The district court returned to the subject of Dr. Cady's report later in the proceedings, stating that it disagreed with Dr. Cady's assessment of Hodge's risk of reoffending and noting that Hodge revealed to Dr. Cady that he had sexually abused three other children prior to the instant offenses.

The court also discussed other §3553(a) factors, including the need for the sentence imposed to reflect the seriousness of the offenses, to promote respect for the law, to provide deterrence, to protect the public from Hodge, and to provide Hodge with correctional treatment. Following this discussion of the §3553(a) factors, the district court sentenced Hodge to 1380 months' (115 years') imprisonment. Hodge filed this appeal one month later.

## II.

We review Hodge's sentence for reasonableness under an abuse-of-discretion standard. *United States v. England*, 604 F.3d 460, 464 (7th Cir. 2010). Our review involves two steps. First, we determine whether the sentencing court committed procedural error, and then we consider the substantive reasonableness of the sentence. *Id.* A sentencing court's failure to consider the 18 U.S.C. §3553(a) factors constitutes proce-

dural error. *United States v. Ramirez-Mendoza*, 683 F.3d 771, 774 (7th Cir. 2012). Because Hodge waived a challenge of the substantive reasonableness of his below-Guidelines sentence, we consider only whether the district court committed procedural error.

To determine a defendant's sentence, the district court must, following the calculation of the applicable advisory Guidelines range, make "an individualized assessment based on the facts presented." *Gall v. United States*, 552 U.S. 38, 50 (2007). "[A]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the §3553(a) factors to determine whether they support the sentence requested by a party." *Id.* at 49–50. These factors include, *inter alia*, "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. §3553(a)(1), as well as several penological objectives: "to reflect the seriousness of the offense, … promote respect for the law, and … provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment," §3553(a)(2). Although we treat the Guidelines as advisory post-*Booker*, the application of the §3553(a) factors is mandatory. *United States v. Miranda*, 505 F.3d 785, 791 (7th Cir. 2007); *see also United States v. Booker*, 543 U.S. 220, 261–63 (2005).

In fashioning the appropriate sentence, the district court "need not address every §3553(a) factor in checklist fashion, explicitly articulating its conclusions regarding each one."

*United States v. Shannon*, 518 F.3d 494, 496 (7th Cir. 2008). Instead, "the court may simply give an adequate statement of reasons, consistent with §3553(a), for thinking the sentence it selects is appropriate." *Id.* Specifically, courts "are expected to address principal, nonfrivolous arguments in mitigation," provided that factual foundations exist for these arguments. *United States v. Chapman*, 694 F.3d 908, 913–14 (7th Cir. 2012). Courts also must "adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Gall*, 552 U.S. at 50.

We hold that the district court met this standard here, giving appropriate consideration to how each of the relevant §3553(a) sentencing factors applied in Hodge's case. In determining Hodge's sentence, the district court paid particular attention to the mitigating evidence that Dr. Cady presented. Specifically, the court cited Dr. Cady's report for the propositions that Hodge suffers from pornography addiction and was abused and exposed to pornography as a child, as previously noted. These statements are among the more significant of Dr. Cady's conclusions. Essentially, the district court made one set of inferences from Dr. Cady's testimony, whereas Hodge wanted the court to draw other inferences from it. This difference does not constitute procedural error. The judge had good reason to discount the psychiatrist's assessment of Hodge's potential for rehabilitation: Hodge had filtered the information about his conduct when being interviewed about his treatment of the child.

Hodge faults the district court for not also commenting on Dr. Cady's opinion that Hodge's premature sexualization had lasting psycho-biological effects or noting Dr. Cady's views on

Hodge's potential for rehabilitation.[1] The district court, however, is not required to specifically address every discrete point contained in a complex, nuanced psychological report. *See United States v. Collins*, 640 F.3d 265, 271 (7th Cir. 2011) (stating that courts need not "tick off every possible sentencing factor or detail and discuss, separately, every nuance of every argument"). The defendant's history and characteristics is one of many §3553(a) sentencing factors; Dr. Cady was one of four witnesses to offer testimony in mitigation pertaining to Hodge's history and characteristics; and the specific conclusions from Dr. Cady's report that Hodge now faults the district court for not addressing are but a subset of the multiple points in Dr. Cady's report and testimony. The level of detail that Hodge would like us to require sentencing courts to include in their discussions of the §3553(a) factors is simply unrealistic.

Hodge directs our attention to three recent cases in which we vacated defendants' sentences and remanded for resentencing, based on the district courts' failures to address adequately defendants' arguments in mitigation. *See United States v. Robertson*, 662 F.3d 871 (7th Cir. 2011); *Miranda*, 505 F.3d 785; *United States v. Cunningham*, 429 F.3d 673 (7th Cir. 2005). These cases, however, are distinguishable from the instant matter.

---

[1] Hodge also claims that the district court did not explain why its chosen sentence serves the objective of protecting the public, as stated in §3553(a)(2)(C). But the district court stated that, since Hodge's 1380-month sentence in effect will keep him behind bars for the rest of his life, the court "doubt[s] there's much risk of further crimes" committed by Hodge.

In *Robertson*, the defendants' "principal argument at sentencing was that they had rehabilitated themselves." *Robertson*, 662 F.3d at 879. The defendants had ample time to undergo this self-rehabilitation, as the government did not charge them with their wire fraud offenses until almost ten years had passed. *Id.* At sentencing, the defendants presented "unusually strong" evidence of their rehabilitative efforts, including their gainful employment, volunteer work, and lack of other criminal conduct (aside from a reckless driving conviction) during the intervening period. *Id.* Based on the Robertsons' remarkable rehabilitation during the period between their criminal activity and their indictment, and the fact that the defendants relied on this rehabilitation as their central argument in mitigation, we found the sentencing court's minimal treatment of the argument to be insufficient. *Id.* In the instant case, by contrast, Dr. Cady's relatively brief comments that Hodge claims the district court should have specifically addressed during its discussion of the §3553(a) factors were one of many arguments that Hodge made in mitigation. In stark contrast to the Robertsons, Hodge's production and distribution of child pornography continued right up to the time of his arrest in this case. He had not turned away from this criminal activity long before detection.

In *Miranda*, the defendant presented psychiatric mitigation evidence that was, simply put, of a different order of magnitude than that in the instant case. In that case, a psychiatrist diagnosed the defendant with schizoaffective disorder and testified that the defendant suffered auditory-command hallucinations instructing him to rob a bank. *Miranda*, 505 F.3d at 789. Hodge's pornography addiction and status as a victim

of childhood sexual and physical abuse, although certainly troubling, are not in the same category as is the mitigation evidence of extreme mental illness in *Miranda*.

Finally, in *Cunningham*, we noted two related problems with the district court's sentence determination. 429 F.3d 673 at 678. First, we faulted the district court in *Cunningham* for giving "substantial weight" to the government's "vague, belated, [and] unsubstantiated" allegation that the defendant failed to cooperate with law enforcement. *Id.* Second, we noted that the district court failed to mention the defendant's psychiatric problems and substance abuse, which the defendant presented as a mitigating factor. *Id.* The defendant had a "long history of psychiatric illness," including a suicide attempt, hospitalization for clinical depression, acute and chronic anxiety, and compulsive disorder. *Id.* at 676. Taken together, the district court's undue attention to the allegation that the defendant failed to cooperate and lack of attention to the defendant's mitigating evidence of severe psychiatric disorders "undermin[ed] our confidence in the sentence." *Id.* at 678. Neither of our concerns with the district court's behavior in *Cunningham* are present in the instant case. First, Hodge does not argue that the factors that the district court considered were inappropriate; his appeal is limited to the claim that the court failed to adequately address his arguments in mitigation. Second, as with *Miranda*, the psychiatric disorders present in *Cunningham* are significantly more severe than those that Dr. Cady indicated Hodge has suffered.

In stating this conclusion, we do not intend to minimize the seriousness of pornography addiction and trauma stemming from childhood sexual and physical abuse. It seems safe to

assume, however, that many individuals that engage in conduct similar to Hodge's also suffer from psychological dysfunctions. Well-adjusted people, after all, do not tend to produce child pornography. Offering mitigating evidence of the type that Hodge presented (via Dr. Cady's testimony) seems akin to an individual convicted of multiple counts of driving under the influence of alcohol telling the judge that he suffers from alcohol addiction, without admitting the full severity of the drinking habit. The addiction and the criminal behavior certainly correspond. But it would be within the judge's discretion not to consider recognition of the addiction to be mitigation unless there is a solid reason to conclude that the addict is unlikely to recidivate. We could understand if, in light of the offensive conduct, the judge in this hypothetical situation were to view such information as not particularly noteworthy for sentencing purposes. The same is true here. Given the shaded version of the offense conduct that Hodge provided Dr. Cady, the prospects for Hodge's rehabilitation may not have appeared as rosy to the judge as they did to the psychiatrist.

Hodge's favored approach would turn sentencing courts' discussions of the §3553(a) factors into checklist exercises, depriving judges of their discretion in sifting through large amounts of evidence to determine which items are most relevant. The Supreme Court has cautioned against such a checklist approach, reminding reviewing courts that "[t]he sentencing judge is in a superior position to find facts and judge their import under §3553(a)." *Gall*, 552 U.S. at 51 (internal quotation marks omitted). Here, the district court determined that the most noteworthy aspects of Dr. Cady's testi-

mony for mitigation purposes were his statements that Hodge suffered from pornography addiction, childhood sexual abuse, and childhood exposure to pornography. That the district court did not also discuss Dr. Cady's testimony concerning the effects of Hodge's premature sexualization or his views of Hodge's prospects for rehabilitation does not rise to the level of procedural error.

Accordingly, the district court's sentence is AFFIRMED.