In the

# United States Court of Appeals

### For the Seventh Circuit

No. 14-2331

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DAYTON POKE,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Western Division.
No. 11 CR 50062-1 — **Frederick J. Kapala**, *Judge.*

ARGUED JUNE 9, 2015 — DECIDED JULY 15, 2015

Before POSNER, KANNE, and SYKES, *Circuit Judges.*

POSNER, *Circuit Judge.* The defendant, age 35 at sentencing, was sentenced to 420 months in prison—35 years—for possessing 1.2 grams of crack cocaine with intent to sell; possessing a gun though he'd previously been convicted of a felony; and using the gun in furtherance of a drug-trafficking offense. See 21 U.S.C. § 841(a)(1); 18 U.S.C. §§ 922(g)(1), 924(c)(1)(A), (e)(1). He was also a career offender, having been convicted of two previous drug of-

fenses. The statutory minimum sentence for all his offenses combined was 20 years (240 months)—15 years for his being a felon in possession and 5 years for carrying a firearm in furtherance of a felony. There is no minimum statutory sentence for possession of 1.2 grams of crack with intent to sell, 21 U.S.C. §§ 841(b)(1)(B)(iii), (b)(1)(C), but the firearm-in-furtherance sentence was required by 18 U.S.C. § 924(c)(1)(D)(ii) to be made consecutive to the prison sentence imposed on any other count.

Because the defendant was convicted on all counts and was a career offender, his guidelines sentencing range was 360 months to life; had he not been a career offender, it would have been 160 to 185 months. The judge sentenced him, as we said, to 420 months. The judge also imposed a 5-year term of supervised release.

The prison sentence appears to involve an accidental double counting. The judge explained at the sentencing hearing that he was sentencing the defendant to 360 months on the drug charge (including 180 months on the felon-in-possession charge to run concurrently with the 360-month drug sentence), and to another 60 months for carrying a gun in furtherance of a drug offense; the total was 420. Although the judge was required to make the 60-month sentence run consecutively to the sentence he imposed for the drug offense, 18 U.S.C. § 924(c)(1)(D)(ii), he could have sentenced the defendant to only 360 months, the bottom of the guidelines range, by apportioning 60 of those months to the gun-in-furtherance count and the remaining 300 to the drug and felon-in-possession counts. See U.S.S.G. § 5G1.2(e).

Not that the judge ever said that he intended to sentence the defendant at the bottom of the guidelines range—and of

course he was not bound to do so—but all that is clear is that he didn't want to impose a below-guidelines sentence, and he may have believed that he would have been doing that had he given the defendant a sentence of only 360 months. Such a belief would have been a mistake, based on a failure to consider the apportionment option, which, without piercing the floor of the guidelines range, would allow a total sentence of 360 months to be imposed even though the gun-in-furtherance sentence was required to run consecutively to the drug and felon-in-possession sentences.

The judge must also reexamine the supervised-release part of the sentence because he failed to justify the nonmandatory conditions that he imposed. He did not apply to them the sentencing factors specified in 18 U.S.C. § 3553(a), as he was required to do. *United States v. Kappes*, 782 F.3d 828, 845–46 (7th Cir. 2015); *United States v. Thompson*, 777 F.3d 368, 373–74 (7th Cir. 2015). The government points out that the defendant's 5-year term of supervised release is below the statutory minimum (6 years) applicable to the drug offense. 21 U.S.C. §§ 841(a)(1), (b)(1)(C). Although the government did not cross appeal, the district court on remand, since it will be reconsidering the conditions of supervised release, will have the power to alter the term to bring it into conformity with the statute. Moreover, the government concedes that the defendant must be fully resentenced, and so the judge will have to consider the possible bearing of a revised set of conditions of supervised release on the appropriate prison sentence to impose, and vice versa.

Since the defendant must be resentenced, we reiterate the concern expressed in our recent opinion in *United States v. Presley*, No. 14-2704, 2015 WL 3622073 (7th Cir. June 11,

2015), with sentences that are likely to keep a defendant in prison into his old age even though he may become harmless many years earlier. If the defendant in this case receives no good-time credits, he will be 70 when he completes a 35-year sentence; if he receives maximum good-time credits he will be 65. If his criminal specialty were tax evasion or Ponzi scheming, he might decide to resume his criminal career upon release even if he was then in his 60s or early 70s. But he is an armed drug dealer. That is a young man's career, which a man would be unlikely to resume in his fifties, let alone his late sixties or early seventies. Defendants in their 60s accounted for only 1.18 percent of persons entering federal prisons in 2012 for drug offenses. Bureau of Justice Statistics, "FY 2012 Prisoners Entering Federal Prison," www.bjs.gov/fjsrc/var.cfm?ttype=one_variable&agency=BO P&db_type=Prisoners&saf=IN (visited July 13, 2015) (to retrieve these figures, select "Age at time of commitment" as the row variable and "Offense type" as the column variable). Of course "unlikely" is not synonymous with "impossible." In 2012, 1,479 defendants were 61 to 70 years old at the time of sentencing, and of these 21.64 percent were sentenced for drug-related offenses. *Id.* Another study found that 15 percent of inmates released after the age of 50 were later rearrested within 3 years of their release, 41 percent for a drug-related offense. See Office of the Inspector General, "The Impact of an Aging Inmate Population on the Federal Bureau of Prisons" 39–40 (May 2015), https://oig.justice.gov/reports/2015/e1505.pdf (also visited July 13).

Yet it appears that the principal justification for keeping a defendant in prison until old age would be to deter others from entering or persisting in the armed drug trade. But as we noted in *Presley*, criminals, especially violent ones, tend

to be persons who have what economists call a high "discount rate," meaning that they give little weight to events in the far future, which in the case of a criminal includes the prospect of years of prison to be served many years in the future.

Some criminals commit acts of such evil as to arouse righteous indignation that demands heavy punishment without regard to deterrence; but the defendant in this case is a small-bore drug dealer, charged with possession of only 1.2 grams of crack with intent to sell. The district judge needs to consider whether concerns of deterrence, either special (deterring the defendant from committing crimes upon his release from prison) or general (his punishment as a deterrent to others who might consider committing similar crimes), warrant a sentence of 420 months (admittedly a sentence within the guidelines range).

The decision of the district court is vacated and the case remanded for further proceedings consistent with this opinion.