In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-1495

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

BRYCE WOODS,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 11 CR 595-2 — **Virginia M. Kendall**, *Judge.*

ARGUED NOVEMBER 18, 2015 — DECIDED DECEMBER 23, 2015

Before POSNER, MANION, and SYKES, *Circuit Judges.*

POSNER, *Circuit Judge.* The defendant was found guilty of multiple counts of health care fraud, 18 U.S.C. § 1347, and Judge Kendall sentenced him to 70 months in prison (a shade under six years). His appeal argues only that he should be resentenced because the judge did not address one of his arguments for a lighter sentence—that after committing the fraud he landed an honest job and performed it in

exemplary fashion, demonstrating that he has been rehabili-tated.

The fraud was the brainchild of a pair of companies (both run by the same doctor) for which the defendant worked. The companies purported to provide psychological services to residents of nursing homes. The boss of the enterprise di-rected the defendant, who had significant administrative du-ties, to file almost 34,000 claims for Medicare reimbursement for services that either were not provided at all or did not comply with Medicare requirements for reimbursement. The defendant, although not a psychologist, conducted some of the phony treatment sessions himself; others were conduct-ed by unqualified graduate students. Had the claims of Med-icare reimbursement been paid in full, the government would have been out almost $3.5 million between 2006 and 2011; as it was, the government paid the fraudulent enter-prise only $1.5 million. Judge Kendall correctly calculated a guidelines range for the defendant of 70 to 87 months, and the sentence she imposed was thus at the bottom of the range.

The fraud ended in 2011 when the scheme was discov-ered; two years later the defendant started work for a com-pany called American Leaders, Ltd., which provides leader-ship training for business executives and is a subsidiary of Fleming Group. His supervisor, a vice president of Ameri-can Leaders, wrote a letter submitted at the sentencing hear-ing praising the defendant as an exemplary employee and saying that the defendant had been offered management po-sitions in several of the company's overseas offices, though of course he couldn't exercise any of these options because of his prosecution and conviction, of which the employer

was aware. What his duties were at American Leaders is somewhat unclear; according to his lawyer "he set[] up meetings for persons who are trying to become better in business."

The defendant's lawyer pressed the rehabilitation argument at the sentencing hearing and the judge questioned him about it, so she unquestionably was aware of it; but she rejected it without explanation as a ground for giving the defendant a below-guidelines sentence. Ordinarily a criminal defendant's nonfrivolous argument for leniency requires discussion by the sentencing judge, *United States v. Hodge*, 729 F.3d 717, 723–24 (7th Cir. 2013), but the argument of the defendant in this case bordered on the frivolous. It is too pat for a person convicted of a substantial business fraud to ask for leniency on the ground that after the fraud ended he went to work for a business that (we can assume) does not engage in fraud. What would one expect him to do? He landed the job within two months of his conviction, and in the year and a half that followed (he remained free on bail until he was sentenced in February 2015) unsurprisingly eschewed (so far as anyone knows) fraudulent activity. That tells a judge nothing about what business opportunities the defendant might seek upon completion of a shorter prison sentence than she was minded to impose; he might seek opportunities that would enable him to engage in fraud again, fraud being an activity in which he had a good deal of experience.

If a defendant convicted of dangerous criminal activity such as operating a drug stash house goes straight after being released from prison in middle age there is a fair likelihood that he will remain straight because the type of crimi-

nal activity that he had engaged in is a young man's game. *United States v. Poke*, 793 F.3d 759, 760–61 (7th Cir. 2015); *United States v. Presley*, 790 F.3d 699, 701–03 (7th Cir. 2015). But there is little basis for confidence that a businessman will eschew fraud when he re-enters the job market after completing his prison sentence. Fraud isn't the type of crime one ages out of, because it does not involve physical danger. So, for example, Jeffery T. Ulmer & Darrell Steffensmeier, in their chapter, "The Age and Crime Relationship: Social Variation, Social Explanations," in *The Nature Versus Biosocial Debate in Criminology: On the Origins of Criminal Behavior and Criminality* 377, 386–87 (Kevin Beaver et al., eds., 2014), place fraud among "offenses with flatter age curves," which "are often those for which the structure of illegitimate opportunities increases rather than disappears with age."

The fact that a defendant convicted of fraud is able to secure a lawful job while on bail is thus not a persuasive reason for giving him a below-guidelines sentence; it does not prove rehabilitation; and so clear is this that the sentencing judge is not to be faulted for failing to explain why it isn't a compelling reason for dipping below the bottom of the applicable guidelines range. According to the presentence report, the defendant's annual earnings when employed by American Leaders were not quite $22,000, and if his criminal record keeps his earnings depressed when he is released from prison he may be tempted to try his hand at fraud again, and may succumb to the temptation.

Since the defendant's employment argument borders on the frivolous, the sentencing judge was entitled to ignore it, and to focus as she did on the other, more substantial arguments that the defendant made for leniency, having to do

with the extent of his participation in the conspiracy and his lack of any other criminal history. The judge also discussed at length the details of the offense and the defendant's family background. We are confident that she imposed an appropriately individuated sentence.

AFFIRMED